IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| AMERICA ONLINE, INC., )<br>    Plaintiff, )<br> )<br>    v.        )<br> )<br>MATTHEW BAGLEY, et al., )<br>    Defendants. ) | Civil Action No. 1:05cv449 |

## JUDGMENT ORDER AND INJUNCTION

Plaintiff America Online, Inc. filed this complaint on April 21, 2005, alleging that defendants Matthew Bagley and John Does 1-10 violated, *inter alia*, the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003, 15 U.S.C. § 7701 *et seq*., the Virginia Computer Crimes Act, Va. Code § 18.2-152.2 *et seq*. and other state laws by transmitting millions of unsolicited bulk e-mail messages to plaintiff and its members. Defendant Bagley failed to file a timely response to the complaint and default was therefore entered against him on July 12, 2005. This default was later vacated, however, without objection from the plaintiff, following defendant Bagley's filing of a motion for an extension of time to file an answer. Although this request for an extension of time was granted, defendant Bagley again failed to file an answer by the ordered deadline and has not participated in this action in any respect with the exception of filing the motion for an extension of time. Default was therefore reinstated on August 16, 2005, and the matter was referred to the magistrate judge for an *ex parte* damages hearing and the preparation of a report and recommendation with respect to defendant Bagley. The remaining John Doe defendants were ultimately dismissed on plaintiff's motion on January 4, 2006.

Upon consideration of the April 10, 2006 Report and Recommendation of the United States Magistrate Judge designated to conduct a hearing in this matter, no objections having been filed, and upon an independent *de novo* review of the record, it is hereby **ORDERED** that the Court adopts as its own the findings of fact and recommendation of the United States Magistrate Judge, as set forth in the April 10, 2006 Report and Recommendation, with the exception of the amount of attorneys' fees awarded.

Plaintiff requests an award of legal fees of $259,480.50 for 876.9 hours of work performed by five lawyers and one "project assistant" in this uncontested case. On its face, this claim is unreasonable given that the matter (i) was uncontested, (ii) lasted slightly less than a year, and (iii) involved only three hearings and the filing of very few substantive briefs. Indeed, it appears from a review of the record that one of the largest pleadings filed in this matter is the fee petition itself.

The legal principles dispositive of a fee petition are well-settled. First, the fee applicant, in this case the plaintiff, bears the burden of establishing by clear and convincing evidence the amount of a reasonable fee in the circumstances. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "The most useful starting point for determining the amount of a reasonable fee" is to determine the lodestar amount, or "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id*. In this regard, "[p]roper documentation is the key to ascertaining the number of hours reasonably spent on legal tasks." *See EEOC v. Nutri/System, Inc.*, 685 F. Supp. 568, 673 (E.D. Va. 1988). Indeed, fee claimants must submit documentation that reflects "reliable contemporaneous recordation of time spent on legal tasks that are described with reasonable particularity," sufficient to permit the court to weigh the hours claimed and exclude hours that were not "reasonably expended." *Id.* (citing *Hensley*, 461 U.S. at 433). Inadequate documentation

includes the practice of grouping, or "lumping," several tasks together under a single entry, without specifying the amount of time spent on each particular task. *See, e.g., In re Great Sweats, Inc.*, 113 B.R. 240, 244 (Bankr. E.D. Va. 1990) (disapproving the practice of "lumping" several tasks under a single entry without specifying the amount of time spent on each task so that no accurate determination of the reasonableness of the time expended can be made); *In re WHET, Inc.*, 58 B.R. 278, 280 (Bankr. D. Mass. 1986) (noting that "lumping" a day's activities makes attorneys' records of absolutely no value for any analytical purpose).

Lumping and other types of inadequate documentation are thus a proper basis for reducing a fee award because they prevent an accurate determination of the reasonableness of the time expended in a case. Such a reduction can be accomplished in one of two ways: (i) by identifying and disallowing specific hours that are not adequately documented, or (ii) by reducing the overall fee award by a fixed percentage or amount based on the trial court's familiarity with the case, its complexity and the counsel involved. *See EEOC*, 685 F. Supp. at 576 (citing *Uzzell v. Friday*, 618 F.Supp. 1222, 1226, 1229 (M.D.N.C.1985) (fees reduced 25% for attorneys and 35% for paralegals as a result of inadequate documentation)).

The determination of a fee award must also be informed by "other considerations that may lead the district court to adjust the fee upward or downward," including the twelve "*Johnson*" factors. *Hensley*, 461 U.S. at 434 (citing *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir.1974)).[1] Ultimately, "[t]he matter of attorney fees rests, of course, within the sound discretion

---

[1] Specifically, the twelve *Johnson* factors are as follows: (1) the time and labor required to litigate the suit; (2) the novelty and difficulty of the questions presented by the lawsuit; (3) the skill required properly to perform the legal services; (4) the preclusion of other employment opportunities for the attorney due to the attorney's acceptance of the case; (5) the customary fee for such services; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the

of the trial judge, who is in the best position to determine whether,...[and to what extent], they should be awarded." *Kimberly-Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1458 (Fed. Cir. 1984). And in all instances, it is important to remember that "[a] request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437.

As an initial matter, it is important to note the substantial differences in hourly billing rates assigned to the various partners and associates involved in this case. For example, a partner from the firm of Latham & Watkins bills her time at an hourly rate of $510, while a partner of roughly the same vintage and experience from the Internet Law Group (ILG), with whom Latham & Watkins contracted to perform internet-related work on this case, bills his time at approximately half the Latham & Watkins rate. Additionally, the hours expended on this case by the "project assistant" from Latham & Watkins are actually billed at a higher rate than those expended by a junior associate from ILG. These differences in billable rates are substantial and significant, as there is every reason to believe that all of the work in this case could have been performed by the ILG lawyers, who appear to focus their entire practice on precisely this type of case and who appear to be possessed of experience and skill adequate to handle the case, especially given that it was uncontested.[2]

---

circumstances; (8) the amount in controversy involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the attorneys' professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 488 F.2d at 717-19.

   [2] Of course, this does not mean that the Latham & Watkins lawyers are not exceptionally skilled and experienced; they undoubtedly are. But to have deployed three Latham & Watkins lawyers and two ILG lawyers to do legal battle in this case is somewhat akin to deploying a carrier task force to deal with a fishing boat that scurries away flying a white flag of surrender. And even assuming that the carrier task force was initially needed to frighten the fishing boat off, which is doubtful, the fact that both firms continued to work on the case is also akin to keeping the carrier task force assembled and at general quarters long after the putative enemy has capitulated and fled.

Plaintiff's practice of lumping multiple tasks together in single entries throughout its fee petition also makes it difficult to determine the reasonableness of the time expended by the lawyers involved.  For example, there are at least 11 separate entries related to the preparation and review of the complaint by four or five different lawyers.  Each entry in this regard is lumped together with additional tasks unrelated to the preparation and review of the complaint.  The fee claim is replete with other lumping of this sort which precludes an accurate assessment of the reasonableness of the time spent on reviewing the draft complaint and many other tasks, as well.

Nor do any of the *Johnson* factors, applied here, support the claim for a quarter million dollar fee.  This uncontested case presented no complex, novel issues, required no extensive discovery, no depositions and no extensive briefing.  While an overall favorable result was obtained, it is worth noting that the magistrate judge concluded that plaintiff failed to prove damages with respect to Count II — a conclusion to which plaintiff (sensibly) did not object — and plaintiff instead sought damages only with respect to Count I.

In sum, plaintiff's inadequate documentation, as well as the application of the most pertinent *Johnson* factors, simply do not warrant the award of a quarter million dollars in legal fees as sought by plaintiff.  Instead, based on a review of the record as a whole, and based on this Court's familiarity with the case, the issues raised and the proceedings required, the Court concludes it is appropriate to reduce plaintiff's requested fee award by approximately half, to $125,000.00.

Accordingly, it is hereby **ORDERED** that default is **ENTERED** in favor of plaintiff and against defendant Matthew Bagley on all counts, with plaintiff awarded statutory damages of $6,220,000.00 as to Count I, plus an additional $18,900.25 for costs and $125,000.00 for attorneys' fees, for a total default judgment of $6,363,900.25.

5

It is further **ORDERED** that defendant, his employees, officers, agents, servants, attorneys and all those acting in concert and participation with him, are hereby **ENJOINED** from sending or transmitting, or directing, aiding or conspiring with others to send or transmit, any e-mail or electronic communication bearing any false, fraudulent, anonymous, inactive, deceptive, or invalid return information, or otherwise using any other artifice, scheme or method of transmission that would prevent the automatic return of undeliverable electronic mail to its original and true e-mail address or internet protocol address of origin or that would cause the e-mail return address to be that of anyone other than the original sender.

The Clerk is directed to enter judgment pursuant to Rule 58, Fed. R. Civ. P. and to place this matter among the ended causes.

The Clerk is further **DIRECTED** to send a copy of this Judgment Order and Injunction to defendant and all counsel of record.

/s/
_____
T. S. Ellis, III
United States District Judge

Alexandria, VA
May 8, 2006